STATE OF CONNECTICUT *v.* ROBERT ANDERSON
(3093)

HULL, DALY and BIELUCH, Js.

Argued November 12, 1985—decision released January 7, 1986

*Elsa M. Calderon,* deputy assistant public defender, for the appellant (defendant).

*Erin M. Kallaugher,* law student intern, with whom were *John M. Massameno,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, and *Frank D'Addabbo,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant was convicted, after a trial to a jury, of sexual assault in the third degree in violation of General Statutes § 53a-72a. He appeals the conviction claiming that the trial court erred in denying, in part, his motion to exclude evidence of prior convictions and in denying his motion to suppress evidence of the victim's and a witness' out-of-court identifications of him. We conclude that neither of these claims has merit, and accordingly find no error.

The jury, on the basis of the evidence introduced at trial, could reasonably have found the following facts. The victim, while walking home from work on October 3, 1983, at approximately 1:15 a.m., was confronted several times by a man driving a car. After following the victim, the man got out of his car and grabbed her breasts. Another man, who was driving by, saw the struggle, stopped and approached the victim. The assailant then fled.

The victim and the witness gave the police certain information about the assailant's car. On the basis of this information, the police went to the defendant's father's home and asked the defendant to accompany them to headquarters. The witness and the victim, who had gone to the station to give the police a statement concerning the incident, both identified the defendant as the assailant. At trial, the victim and the witness made in-court identifications of the defendant, and the state introduced evidence of their out-of-court identifications.

Prior to the start of evidence, defendant's counsel made an oral motion in limine to prevent the state from introducing evidence of the defendant's 1982 felony convictions for sexual assault in the first degree and for kidnapping in the second degree.[1] The court denied the motion without prejudice and the defendant excepted to the ruling. The defendant renewed the motion at trial and the state's attorney indicated that he would introduce evidence of the convictions only to impeach the defendant. The court postponed ruling on admissibility until the state might attempt to offer the evidence. After the state rested, the defendant again pressed his motion, but the court again postponed ruling. The defendant excepted to the court's postpone-

[1] Just before trial, the defendant had filed a written motion in limine in which he sought to exclude evidence of prior convictions for sexual assault and for burglary. That motion was denied.

ment. In response to the defendant's exception, the court reconsidered and decided the motion at that time, holding that the state could introduce evidence of the kidnapping conviction, but not of the sexual assault conviction. The defendant did not object or take an exception to this ruling. He did not testify and, therefore, evidence of his kidnapping conviction was not introduced.

The defendant first claims error in the trial court's refusal to prohibit the state from admitting evidence of his conviction for kidnapping. He contends that the court erred in so ruling because the prejudice from admitting the evidence would have far outweighed its probative value. The defendant argues that this error was harmful, even though the evidence was not admitted, because the threat that it would be admitted deterred him from testifying.

The defendant did not, as mentioned above, except to the court's decision to allow the state to admit the evidence. Under Practice Book § 288 "[e]videntiary rulings ordinarily must be preserved for appellate review by an exception. *State* v. *Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978). 'The purpose of requiring an attorney to except is not merely formal. An exception serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial.' *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984)." *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1985). The defendant's failure to except or to seek review under the doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), thus bars consideration of the merits of this claim.[2]

---

[2] The defendant's previous exceptions to the court's rulings on his motion in limine did not preserve this claim of error. "When the court made its ultimate ruling, 'the defendant could then have reminded the court of his previous exception . . . and reiterated his exception if he found the court's

The defendant's next claim of error is based on the trial court's decision to admit testimony of the witness' and the victim's out-of-court identifications of him. The defendant asserted, in a motion to suppress, that the procedures used to elicit the identifications were unnecessarily suggestive and that the resulting identifications were unreliable. On the basis of these allegations, he argued that admitting evidence of the identifications would violate his fourteenth amendment due process rights. The trial court, finding that the identification procedures used were not suggestive and that each identification was reliable, denied the motion to suppress. In this appeal, the defendant claims that the trial court's decision was erroneous.

"[T]he use of out-of-court police identification procedures may give rise to a claimed violation of due process of law if the conduct of the procedure in a given instance was 'unnecessarily suggestive and conducive to irreparable mistaken identification . . . . ' " *State* v. *Hafner,* 168 Conn. 230, 235, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975), quoting *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). Police procedures are suggestive where the circumstances surrounding the identification indicate "to the victim that she should positively identify the defendant." *State* v. *Gordon,* 185 Conn. 402, 414, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982).

In this case, different methods were used to obtain the victim's identification and the witness' identification. The witness gave uncontroverted testimony that he identified the defendant spontaneously as the defendant entered the police station. In a factually similar case, our Supreme Court held that an accidental con-

---

[ruling] insufficient' to protect his rights. *State* v. *Jones,* [193 Conn. 70, 88, 475 A.2d 1087 (1984).]" *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1985). His failure to do so renders the claim unreviewable.

frontation between a witness and a defendant did not result in a tainted identification.[3] *State* v. *Villafane,* 171 Conn. 644, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled, in part, on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984), reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). In *Villafane,* the court, in reaching its conclusion, emphasized that the confrontation "was not *conducted* by the police" and that "[t]here was no evidence that the encounter was in any way prearranged . . . ." (Emphasis in original.) *State* v. *Villafane,* supra, 657. Here, as in *Villafane,* the police did not ask the witness to make any identification. Nor is there any indication that the confrontation was arranged. Under these circumstances, the court was correct in concluding that the identification was not tainted and that the defendant's due process rights were not violated by the admission of the evidence.

The trial court did err in ruling that the procedure used to obtain the victim's identification was not suggestive. The victim testified that she was told by a police officer that she was being taken to view a suspect. She was then shown the defendant, who was the only individual in the room not wearing a police uniform. Our Supreme Court has held that such one-on-one confrontations are suggestive. *State* v. *Gordon,* supra, 414; *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976).

The state concedes on appeal that the "show-up" was suggestive, but claims that the defendant has not met his burden of showing that the procedure was also

---

[3] The Supreme Court reached this conclusion even though the witness saw the defendant outside police headquarters, in handcuffs, in the custody of two officers who the witness knew were investigating the incident.

unnecessary.[4] Whether a suggestive procedure is necessary depends on whether "exigent circumstances compel its use; *Simmons* v. *United States,* [390 U.S. 377, 384–85, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)] . . . . " *State* v. *Gordon,* supra, 414. The factors to be considered in determining exigency include whether the defendant is or is not in custody, whether the victim will be available to make an identification when alternative procedures can be arranged, and whether there is any other particular need for the police "to determine quickly whether they [are] on the wrong trail. See *Simmons* v. *United States,* supra, [384–85]." Id., 415.

The defendant elicited testimony from three officers at the hearing on his motion to suppress. All were questioned extensively as to why no photographic array or lineup was conducted. One officer testified that he had no memory of what procedure was used or why. Another testified that no lineup was attempted because the police already had evidence, independent of the victim's identification, that could link the defendant to the crime. That same officer testified that he knew of no reason why a lineup could not have been done the next day. The investigating officer testified that neither a photographic array nor a lineup was arranged because the lateness of the hour made the alternative procedures impossible.

Given the nature of the evidence presented at the suppression hearing, we cannot hold that the "show-up" was necessary. While there was testimony that alternatives were not available that night, there is no indication that there was a special need to have an immediate identification made. The investigating offi-

---

[4] Our Supreme Court has repeatedly emphasized that "[a] defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. *State* v. *Vass,* [191 Conn. 604, 608, 469 A.2d 767 (1983)]; *State* v. *McKnight,* [191 Conn. 564, 570, 469 A.2d 397 (1983)]; *State* v. *Kinsey,* 173 Conn. 344, 345–46, 377 A.2d 1095 (1977)." *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984).

cer testified that there was no reason to believe that the victim would not be available to make an identification later. Another officer testified that he knew of no reason why a lineup could not be held the next day. Perhaps most importantly, that officer testified that he felt he already had sufficient evidence to link the defendant to the crime without the victim's identification.[5] "Although a suggestive procedure may be permitted if exigent circumstances compel its use; *Simmons* v. *United States,* supra, 384–85; this case presented no danger that the opportunity for an identification would be lost unless a speedy show-up was held." *State* v. *Gordon,* supra, 414. Accordingly, we conclude that the procedure used to obtain the victim's identification was unnecessarily suggestive.[6]

"Our determination that the pretrial show-up was unnecessarily suggestive does not end our inquiry into whether the victim's identification of the defendant at the show-up was admissible at trial. The second prong of the . . . test is reliability. . . . [W]e must consider whether the 'totality of the circumstances' rendered the identification unreliable. *State* v. *Packard,* [184 Conn. 258, 265–66, 439 A.2d 983 (1981)]; *State* v. *Theriault,* [182 Conn. 366, 373, 438 A.2d 432 (1980)]." *State* v. *Gordon,* supra, 415; *State* v. *Nelson,* 4 Conn. App. 514, 517, 495 A.2d 298 (1985). The factors to consider in determining whether an identification is reliable despite the use of a suggestive procedure are as follows: the length of time the witness had to view the individual; the conditions, including distance and lighting, under which the witness viewed the individual; the witness' degree of attention during the time he viewed the individual; the time between the incident and the identification; the accuracy of the description given to the police by the witness; and the witness' confidence

---

[5] If the police already had probable cause to arrest the defendant, an issue which we do not address, then the need to obtain an identification immediately was far less compelling.

[6] See *State* v. *Brown,* 187 Conn. 602, 447 A.2d 734 (1982).

about his identification. *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Jennings,* 5 Conn. App. 500, 507, 500 A.2d 571 (1985).

The trial court determined that the identification was, under the totality of the circumstances, reliable. While we recognize that this court must "examine the legal question of reliability with exceptionally close scrutiny and defer less than we normally do to the related fact finding of the trial court"; *State* v. *Gordon,* supra, 416; we find that the trial court's conclusion as to reliability was correct. The defendant concedes that the degree of certainty displayed by the victim and the length of time between the crime and the confrontation indicate reliability. The other factors similarly indicate reliability. The victim testified that the areas where she viewed her assailant were main streets and that they were well lit by street lights. She testified that she looked at her assailant twice while he was in his car, once from a distance of approximately one car width and once from a distance of approximately two car widths. She saw him again from approximately an arm's length when he assaulted her. While she saw him only briefly, she looked directly at him. All these factors, when taken together, show that the court was correct in concluding that, under the totality of the circumstances, the identification was reliable.[7]

There is no error.

In this opinion the other judges concurred.

[7] In one line of his brief, the defendant also asserted that the in-court identifications were tainted by the pretrial identifications. We need not consider this claim because "[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned . . . ." *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982). We note, however, that this claim is disposed of by our decision on the validity of the pretrial identifications. In the absence of a tainted pretrial identification, the state is not required to show an independent basis for the in-court identification. *State* v. *Guertin,* 190 Conn. 440, 459, 461 A.2d 963 (1983).